### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHIEFTAIN ROYALTY COMPANY,<br>on its behalf and as representative of a<br>class of similarly situated royalty owners,<br><br>    Plaintiff,<br><br>v.<br><br>ENERVEST ENERGY INSTITUTIONAL<br>FUND XIII-A, L.P, *et al.*,<br><br>    Defendants,<br><br>and<br><br>CHARLES DAVID NUTLEY, *et al.*,<br><br>    Objectors. | )<br>)<br>)<br>)<br>)<br>)<br>) Case No. CIV-11-177-D<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### ORDER

Before the Court are two motions filed by Objector Charles David Nutley: 1) Motion to Exclude or Strike Billing Records Submitted by Class Counsel in Support of Class Counsel's Renewed Motion for Approval of Attorneys' Fees [Doc. No. 323]; and 2) Motion to Exclude or Strike Certain Declarations in Support of Class Counsel's Renewed Motion for Approval of Attorneys' Fees and Class Representative's Renewed Motion for Approval of Case Contribution Award [Doc. No. 324]. Motion #1 is directed at a filing of attorney time records [Doc. No. 320], and Motion #2 is directed at declarations of Plaintiff's attorneys [Doc. Nos. 302-1, 302-2 and 302-5] and legal experts [Doc.

Nos. 291 through 300].[1]   Plaintiff has responded [Doc. Nos. 329 and 330], and Objector Nutley has replied [Doc. Nos. 331 and 332].   Thus, the Motions are fully briefed and ripe for decision.[2]

## Factual and Procedural Background

The procedural history of this case informs the issues raised by the Motions.   The case was resolved by the settlement of claims for underpayment of oil and gas royalties by a certified class of royalty owners, represented by Plaintiff Chieftain Royalty Company. The settlement involved five defendants, EnerVest Energy Institutional Fund XIII-A, L.P., EnerVest Energy Institutional Fund XIII-WIB, L.P., EnerVest Energy Institutional Fund XIII-WIC, L.P., EnerVest Operating, L.L.C., and FourPoint Energy, LLC.   Objectors Charles David Nutley and Danny George took unsuccessful appeals from the Order and Judgment Granting Final Approval of Class Action Settlement, which was affirmed.   *See Chieftain Royalty Co. v. EnerVest Energy Inst. Fund XIII-A, L.P.*, 888 F.3d 455, 470 (10th Cir. 2017) (amended Apr. 11, 2018); *cert. denied*, 139 S. Ct. 482 (2018).   Objectors prevailed, however, in appeals from the Order Awarding Attorneys' Fees, Reimbursement of Litigation Expenses and Case Contribution Award [Doc. No. 156].   The Tenth Circuit

---

[1]  Motion #2 concludes with a request to strike other declarations of individuals who are not attorneys or legal experts [Doc. Nos. 302-11 through 302-15].  *See* Mot. Exclude or Strike Certain Decls. at 18.   Because these declarations are not addressed in the supporting brief, this request is disregarded.

[2]  The Court finds that the briefing attorneys, particularly Plaintiff's counsel, have made only a modest effort to comply with the Court's prior instruction to temper the strident tone of their briefs.   *See* 9/20/18 Order [Doc. No. 315] at 1 n.1.   The Court disregards all arguments that accuse opposing counsel of stupidity, absurdity, or impropriety.

reversed the awards of attorney fees to class counsel and compensation to Plaintiff as the class representative, commonly known as an incentive award, and remanded the case for a redetermination of these awards. *Id*.

Significantly, the court of appeals determined that the attorney fee and incentive awards are governed by Oklahoma law, both as to whether to make an award from the common fund and how to calculate an amount. *See id*. at 462 (attorney fees), 468-69 (incentive award). In so doing, the Tenth Circuit opined about unsettled Oklahoma law. *See id*. at 468 ("Our task then is to make an informed prediction of what the State's highest court would do."). The court of appeals determined that a percentage-of-the-common-fund method cannot be used to determine either award, that the lodestar method must be used to determine a reasonable attorney fee, and that an incentive award should represent "payment at a reasonable rate for reasonable time expended on services rendered that were helpful to the litigation." *Id*. After receipt of the mandate, Plaintiff and class counsel filed new motions asking the Court to award them the same amounts previously awarded under the rules announced by the Tenth Circuit. *See* Class Counsel's Renewed Mot. Approval of Attys' Fees [Doc. No. 302]; Class Representative's Renewed Mot. Approval Contrib. Award [Doc. No. 304].

However, the Oklahoma Supreme Court later decided in *Strack v. Continental Resources, Inc.*, 2021 OK 21, 2021 WL 1540516 (Okla. Apr. 20, 2021) (to be published), the same issues decided by the Tenth Circuit in this case. *Strack* was also a class action involving a settlement of claims alleging underpayment of royalties that generated a common fund. The supreme court held that the attorney fee award was governed by

3

Oklahoma's class action statute, Okla. Stat. tit. 12, § 2023(G), and "the plain language of [this] statute allows for the calculation of attorney's fees under both the percentage and lodestar methods."  *Strack*, 2021 OK 21, ¶ 16, 2021 WL 1540516 at *4.  The Oklahoma Supreme Court also addressed incentive awards for the first time.  *See id.*, 2021 OK 21, ¶ 33, 2021 WL 1540516 at *8.  The court determined that incentive awards "are justified as payment for reasonable services rendered by class representatives on behalf of the class that were helpful to the litigation" and provided instructions for calculating the award "similar to the lodestar method."  *Id.*, 2021 OK 21, ¶¶ 33-34, 2021 WL 1540516 at *8-9.

Under these circumstances, this Court's determination of reasonable attorney-fee and incentive awards must be guided by *Strack*, which is an intervening decision of Oklahoma's highest court that has resolved the state law issues presented and binds federal courts applying Oklahoma law.  *See Kokins v. Teleflex, Inc.*, 621 F.3d 1290, 1295 (10th Cir. 2010); *Ute Indian Tribe v. Utah*, 114 F.3d 1513, 1521 (10th Cir. 1997) (discussing intervening-change-in-law exception to mandate rule); *see also Padilla-Caldera v. Holder*, 637 F.3d 1140, 1145 (10th Cir. 2011).  This Court is not bound by any part of the Tenth Circuit's opinion regarding Oklahoma law that is inconsistent with *Strack*.

## Objector's Motions

Motion #1 challenges the time records that were compiled by class counsel and submitted after remand in support of their renewed motion to determine an appropriate award of attorney fees from the settlement fund.  Motion #2 asks the Court to disregard numerous declarations presented in support of both the renewed motions for attorney-fee and incentive awards.  Objector Nutley challenges on several grounds the declarations of

1) two of Plaintiff's attorneys; 2) numerous retained legal experts, including practicing attorneys, retired or former judges, and legal scholars; and 3) a former state senator. Objector Danny George asserts a similar challenge to the declarations of Plaintiff's legal experts in his brief opposing the renewed motions; he urges the Court to disregard certain declarations "as improper testimony on what the law is." *See* George's Resp. Br. [Doc. No. 321] at 8, 10, 14. Because there are overlapping arguments, the Court addresses both Motions, as well as George's arguments, in a single order. The Court must dispose of these procedural challenges before it can decide the substantive issues of the amounts of fees to be awarded.

## Standard of Decision

No party addresses the procedural basis of Nutley's Motions or the appropriate standard of decision.³ The only provision of the Federal Rules of Civil Procedure that authorizes striking material from the record speaks to impertinent or scandalous matter in pleadings. *See* Fed. R. Civ. P. 12(f). Nutley's Motions instead ask the Court to disregard documents presented as evidentiary support for Plaintiff's post-judgment motions on the remaining requests for attorney-fee and incentive awards. The Motions raise evidentiary objections and seek to exclude Plaintiff's materials from consideration. They most closely resemble a motion *in limine* seeking a pretrial ruling on the admissibility of evidence. Accordingly, in the Court's view, the Motions raise a preliminary issue of what procedure will be used to resolve the remaining substantive issues.

---

³ The Motions state that Nutley moves "pursuant to Fed. R. Evid. 103," which generally addresses "Rulings on Evidence."

The Court conducted a hearing on the original motions for fee and incentive awards and issued detailed findings pursuant to Fed. R. Civ. P. 23(h). *See* Order Awarding Att'y Fees, Reimb. Litig. Expenses & Case Contrib. Award [Doc. No. 156]. After remand, Plaintiff and its counsel have compiled an extensive documentary record in support of the renewed motions, and Objectors have asserted objections to those materials and presented their own materials. Upon consideration, the Court finds its determination of reasonable awards should be made on the written record without another hearing for several reasons.

First, no party has requested an evidentiary hearing to decide the remanded post-judgment issues. Immediately after the mandate was received, Plaintiff filed a combined Notice and Motion for Hearing on Remand [Doc. No. 266] asking the Court to hold a hearing to determine that the previous awards were reasonable. Objectors opposed the request as premature and otherwise objectionable [Doc. Nos. 271, 274]. After briefing, the Court held an in-chambers conference and discussed with counsel "how to move forward procedurally." *See* 6/7/18 Order [Doc. No. 282]. The Court issued a schedule for appropriate filings in light of that discussion (*id.*), which resulted in the documentary record now presented. None of these filings include a request for an evidentiary hearing.

Second, as a procedural matter, Rule 23(h) and Rule 54(d)(2) permit a motion for recovery of attorney fees to be decided without an evidentiary hearing.[4] Rule 23(h)(1) mandates that "[a] claim for an award must be made by motion under Rule 54(d)(2)," and

---

[4] "The decision to hold an evidentiary hearing when making an attorney's fee award is a matter of procedure, and is therefore governed by federal law under the *Erie* doctrine." *Taco Bell Corp. v. Cont'l Cas. Co.*, 388 F.3d 1069, 1076 (7th Cir. 2004) (quoting *Shakey's, Inc. v. Covalt*, 704 F.2d 426, 435 (9th Cir. 1983)).

Rule 23(h)(3) states "the court may hold a hearing." Rule 54(d)(2)(C) expressly confers discretion on district courts by requiring "an opportunity for adversary submissions on the motion in accordance with Rule 43(c) or 78." Rule 43(c) provides for a motion to be heard on affidavits, oral testimony, or depositions, and Rule 78 authorizes motion hearings or submissions of "motions on briefs, without oral hearings." Clearly then, a district court is expressly authorized to exercise discretion and determine the most efficient manner for resolving fee disputes. Under the circumstances of this case, the Court finds that the documentation supplied by Plaintiff, together with the Court's familiarity with the case, provide an adequate basis to determine reasonable fee and incentive awards and thus no hearing is necessary. *See Robinson v. City of Edmond*, 160 F.3d 1275, 1286 (10th Cir. 1998) ("there is no need for an evidentiary hearing in a[n] attorney's fees case when a record has been fully developed through briefs, affidavits, and depositions"); *see also Hutchinson v. Beckworth*, 474 F. App'x 736, 740 (10th Cir. 2012) (unpublished) ("the decision to rely upon affidavits and the record of a case rather than to conduct an evidentiary hearing lies within the district court's discretion").

Finally, a determination of what materials to consider in the context of determining post-judgment fee applications is not constrained by the Federal Rules of Evidence. As stated, a fee motion may be decided on affidavits, depositions, or documentary materials. In this district, the Local Civil Rules expressly authorize a fee motion to be decided on affidavits "stating the amount of time spent on the case, the hourly fee claimed by the attorney, the hourly fee usually charged by the attorney if this differs from the amount claimed in the case, and any other pertinent factors." *See* LCvR54.2. Even where

evidentiary rules do define the record of decision, the nonjury nature of a proceeding allows them to be less rigidly applied. *See Tosco Corp. v. Koch Indus., Inc.*, 216 F.3d 886, 896 (10th Cir. 2000) ("[I]n bench trials questions raised relative to the admission or exclusion of evidence become relatively unimportant, because the rules of evidence are intended primarily for the purpose of withdrawing from the jury matter which might improperly sway the verdict."); *see also* Pl.'s Resp. Nutley's Mot. at 13-14.

With this premise in mind, the Court turns to Nutley's Motions seeking to prohibit Plaintiff and its counsel from relying on certain materials to support their fee motions. "The motion in limine is a creature of neither the Federal Rules of Civil Procedure nor the Federal Rules of Evidence." *Koch v. Koch Indus., Inc.*, 2 F. Supp. 2d 1385, 1387 (D. Kan. 1998), *den. recons.,* 6 F. Supp. 2d 1207, *aff'd,* 203 F.3d 1202 (10th Cir. 2000). The use of "*in limine* rulings . . . has developed pursuant to the district court's inherent authority to manage the course of trials." *See Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). "The purpose of a motion in limine is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Mendelsohn v. Sprint/United Mgmt. Co.*, 587 F. Supp. 2d 1201, 1208 (D. Kan. 2008) (internal quotations omitted), *aff'd*, 402 Fed. App'x 337 (10th Cir. 2010). Under the circumstances, the Court finds that Nutley's Motions provide little, if any, streamlining benefit. The Court nevertheless elects to address them briefly to clarify the record for future appellate review of the Court's substantive decisions.

**Discussion**

**A.     Motion #1 – Attorneys' Time Records**

Nutley moves to exclude the time records submitted by Plaintiff's counsel in support of the renewed motion for an attorney-fee award on the grounds of lack of authentication under Rule 901 and inadmissible hearsay under Rules 802 and 803.[5] These evidentiary rules do not control the Court's consideration of the attorney time records for reasons discussed above. In any event, Nutley's assertion that the time records are not properly authenticated is misguided; the records are supported by affidavits of the attorneys who compiled them, showing that the records are what they purport to be. Nutley's real complaint is that the time records do not identify which were drawn from time sheets and which were constructed from other records. *See* Mot. #1 at 1-2. This argument goes to the weight and not the admissibility of the records.

As to hearsay, Nutley asserts that the attorneys' time records do not fit the business records exception of Rule 803(6) because some were not contemporaneously made or regularly kept but were created later to satisfy the need for a lodestar calculation. The applicability of a recognized exception to the hearsay rule is the primary issue presented.

Plaintiff's attorneys do not dispute that some of the time records were prepared specifically for the fee application and were not routinely kept before the lodestar issue arose in 2015. However, Plaintiff objects to Nutley's analysis of the admissibility question and presents opposing arguments at each step. Plaintiff contends the time records

---

[5]     All references to a numerical "Rule" mean the Federal Rules of Evidence.

satisfy the residual hearsay exception of Rule 807 because they contain statements that are supported by sufficient guarantees of trustworthiness considering the totality of circumstances and corroborating evidence, and the reconstructed records are more probative than any other evidence the attorneys can obtain through reasonable efforts. *See* Fed. R. Evid. 807(a).

The Court finds that Nutley makes no persuasive response to Plaintiff's argument regarding Rule 807. He essentially argues that Plaintiff's attorneys cannot be trusted to accurately state the amount of time they spent on the case, and he particularly faults Plaintiff's counsel for declining to identify which time records were prepared using materials other than contemporaneous time sheets. Nutley also claims certain time entries are suspect and suggest fabrication based on discrepancies in the numbering system or an identification clause on the time sheets (for example, referencing "Enervest" before 2014). However, Plaintiff fully explains these anomalies in its response to the Motion. *See* Pl.'s Resp. Br., Exs. 1 & 2 [Doc. Nos. 329-1 and 329-2]. Further, the time records are fully supported by the sworn declarations of attorneys who were personally involved, and those who submitted reconstructed time records include explanations of how the submissions were prepared. *See*, *e.g.*, Beckworth Decl. [Doc. No. 302-2] ¶¶ 47-53, 59; Baldwin Decl. [Doc. No. 302-3] ¶¶ 6-7; Hill Decl. [Doc. No. 302-3] ¶ 8; Angelovich Decl. [Doc. No. 302-3] ¶ 5.

Upon a careful consideration of the materials submitted by Plaintiff's attorneys, the Court concludes that their time records provide an adequate and reliable source of information for conducting a lodestar computation in this case. If the Federal Rules of

Evidence were to be applied, the Court would find that the attorneys' time records satisfy the conditions of admissibility under the residual hearsay exception of Rule 807(a).

**B.     Motion #2 – Legal Experts' Declarations**

Nutley in Motion #2 and George in his brief challenge the declarations of Plaintiff's legal experts primarily on the ground that the experts' opinions fail a Rule 702 or *Daubert* challenge and their legal opinions are irrelevant and thus inadmissible under Rule 403. Objectors do not challenge the experts' qualifications or methodology but only whether the opinions are helpful or relevant to the Court's determination of the issues. *See* Fed. R. Evid. 702(a); *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591-92 (1993). Thus, the helpfulness or relevance of the declarations is the guiding principle for whether to consider them.

Nutley primarily asserts that certain statements made by Plaintiff's attorneys and retained experts – particularly in a joint declaration by class counsel, Bradley Beckworth and Robert Barnes, and a declaration by Mr. Beckworth – are "contemptuous of the Tenth Circuit panel and contrary to the appellate court's mandate" and violate "the law of the case and the mandate rule." *See* Mot. Strike Certain Decls. at 4-5, 6-8. Nutley also argues that some experts base their opinions on nonprecedential legal authorities and that legal experts' opinions about Oklahoma law are inadmissible under Rule 702 and Rule 403. *Id*. at 2, 13-14. Nutley contends the declaration of Glenn Coffee, a former state senator, stating his view of legislative intent behind Oklahoma's class action statute and his account of legislative history is incompetent evidence. *Id.* at 16-17. Nutley concedes the experts' declarations contain "a few admissible statements" but contends they

11

should be stricken as "overwhelmingly objectionable" because the Court should refuse "to search for needles in haystacks." *Id*. at 18.

Similarly, George asserts that the legal opinions stated in the declarations are improper because the experts openly express their disagreement with the Tenth Circuit's decision and "opine on the ultimate conclusion of law that this Court is called to rule upon." *See* George's Resp. Br. [Doc. No. 321] at 8, 10 (citing *Specht v. Jensen*, 853 F.2d 805, 807 (10th Cir. 1988) (en banc)). George focuses on the declaration of Joseph Watt, a retired justice of the Oklahoma Supreme Court. George contends Justice Watt's opinions are improper because he "purports to inform this Court what he really intended to write" in *Hess v. Volkswagen of America, Inc.*, 341 P.3d 662 (Okla. 2014), on which the Tenth Circuit relied. *See* George Resp. Br. at 10-11; *see also Chieftain*, 888 F.3d at 463-64.

Opposing Objectors' arguments, Plaintiff asserts that expert opinions "are routinely accepted in determining what constitutes a reasonable attorneys' fee in Oklahoma" and "there is no evidentiary bar against opinions . . . that disagree, yet comply with an appellate ruling." *See* Pl.'s Reply George's Resp. Br. at 1-2 (footnote omitted). Plaintiff responds to Nutley's arguments regarding the law of the case doctrine and the mandate rule that these are not evidentiary rules and that Plaintiff's attorneys and experts, despite disagreeing with *Chieftain*, applied the rules announced by the Tenth Circuit in formulating their opinions. *See* Pl.'s Resp. Nutley's Mot. at 5-6, 9-10. Plaintiff asserts that Nutley ignores the testimony provided by the legal experts on relevant topics, such as class counsel's billing practices, the reasonableness of their rates and the number of hours claimed, and other pertinent factors bearing on the reasonableness inquiry. *Id*. at 10-11. Finally,

12

Plaintiff contends the expert opinions are proper under Rule 702 and Rule 704 and do not run afoul of *Specht*, in which the Tenth Circuit ruled that an attorney's testimony was improperly admitted in a jury trial. *Id*. at 15-20.

Upon consideration of the issues presented, the Court finds that two declarations should be excluded but, for the most part, the declarations of Plaintiff's legal experts should be considered. First, the Court has examined the Declaration of Glenn Coffee [Doc. No. 291] and finds no useful or relevant information. In *Strack*, the Oklahoma Supreme Court made a binding decision regarding § 2023(G); no further interpretation of the statute is needed. Because this inquiry was the sole purpose of the declaration, it will not be considered.[6]

Similarly, the Declaration of Joseph M. Watt [Doc. No. 292] provides an analysis of Oklahoma law governing class-action attorney fee awards and "the propriety of Class Counsel's fee request when viewed in the context of [existing] precedent." *Id*. ¶ 1. Justice Watt, like former-Senator Coffee, opines on a proper interpretation and application of § 2023(G); his report is based on a "review and investigation of the record documents provided to [him] . . . and his review of Oklahoma case law and statutes." *Id*. ¶ 2. Justice Watt concludes based on his view of the law that the requested attorney fee in this case "is well within the range accepted by the Oklahoma Supreme Court." *Id*. ¶ 39. Again, the

---

[6] Notably, Plaintiff submitted the Coffee Declaration and others in substantially similar form in a quest to certify a question of state law to the Oklahoma Supreme Court. *See Chieftain Royalty Co. v. SM Energy Co*., No. CIV-18-1225-J, Pl.'s Unopposed Mot. Certify Question Okla. S. Ct. (W.D. Okla. Mar. 17, 2019) (exhibits were declarations of Glenn Coffee, Joseph M. Watt, William C. Hetherington, Jr., Richard Van Dyck, and Steven S. Gensler). These declarations seem better suited to the certification task than the one before this Court after remand.

supreme court announced in *Strack* the governing legal rules and, despite Justice Watt's extensive knowledge and experience, his opinions are not helpful in light of the decision in *Strack*.[7]

The Court has examined the other eight declarations submitted by legal experts [Doc. Nos. 293 through 300][8] and finds that Nutley is partially correct. Some declarations survey and discuss how state and federal trial courts in Oklahoma have understood and applied § 2023(G) differently than the Tenth Circuit did in this case. *See* Hetherington Decl. ¶¶ 53-58; Van Dyck Decl. ¶¶ 23-34; Gensler Decl. ¶¶ 7-67. The lower court decisions discussed in these declarations have little value after *Strack* because they were not guided by the Oklahoma Supreme Court's interpretation of the statute. Thus, these parts of the declarations will be given little weight. However, the Court finds that the remainder of the declarations provide a combination of factual information and expert opinions that are useful for determining reasonable attorney-fee and incentive awards. This finding overcomes Nutley's primary objection. The declarations also address subsidiary issues that were not decided by the Tenth Circuit or addressed in *Strack*, such as whether the reconstructed time records are adequate to compute a lodestar figure. The

---

[7] Justice Watt also opines about the propriety of counsel's reconstructed time records (*id*. ¶ 30), but he does so primarily by reference to the requirements of Oklahoma law without an accompanying factual analysis.

[8] These experts are William C. Hetherington, Jr. [Doc. No. 293], Richard D. Van Dyck [Doc. No. 294], Steven S. Gensler [Doc. No. 295], Geoffrey P. Miller [Doc. No. 296], Patrick M. Ryan [Doc. No. 297], Michael Burrage [Doc. No. 298], Dan Little [Doc. No. 299], and David Siegel [Doc. No. 300].

Court finds that these declarations overall serve to provide relevant information and opinions that should be considered.[9]

Finally, the Court has examined the challenged declarations of Plaintiff's attorneys [Doc. Nos. 302-1, 302-2 and 302-5] and finds that they also primarily contain factual information rather than the sort of improper legal opinions about which Nutley complains. Although the attorneys make gratuitous statements expressing their views of the Tenth Circuit's decision and Oklahoma law, the primary purpose of these declarations is to explain the attorneys' billing records, hourly rates, and work on the case. The declarations also include the attorneys' opinions, as class counsel, about what was necessary to provide effective representation of the class and a vigorous defense of the legal fee and incentive awards, and what additional work will be needed to effectuate the settlement. Overall, these declarations provided relevant and useful information, and their usefulness is not overcome by the attorneys' legal opinions, as argued by Nutley.

## Conclusion

For these reasons, the Court finds that Nutley has failed to justify exclusion of the attorneys' billing records and thus Motion #1 should be denied, but that Nutley and George

---

[9] The Court also agrees with Nutley that some experts' opinions are conclusory and do not appear to be based on personal knowledge of specific information. For example, Mr. Little states that he believes counsel's time records are accurate and factually supported "[b]ased on [his] experience as a royalty owner, a class representative in a royalty case, and as an attorney who has worked both hourly and on a contingent basis." *See* Little Decl. ¶ 12. Elsewhere in the declaration, Mr. Little indicates his source of information about the case is general discussions with class counsel as a class member. *Id.* ¶ 8. Such conclusory, second-hand opinions are not helpful and will not be given significant weight by the Court.

have shown that some declarations or parts of declarations should be excluded or discounted, as set forth above, and thus Motion #2 should be partially granted.

**IT IS THEREFORE ORDERED** that Objector Charles David Nutley's Motion to Exclude or Strike Billing Records Submitted by Class Counsel in Support of Class Counsel's Renewed Motion for Approval of Attorneys' Fees [Doc. No. 323] is **DENIED**.

**IT IS FURTHER ORDERED** that Objector Charles David Nutley's Motion to Exclude or Strike Certain Declarations in Support of Class Counsel's Renewed Motion for Approval of Attorneys' Fees and Class Representative's Renewed Motion for Approval of Case Contribution Award [Doc. No. 324] is **GRANTED** in part and **DENIED** in part, as set forth herein.

**IT IS SO ORDERED** this 24th day of February, 2022.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge