## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

CHIEFTAIN ROYALTY COMPANY,　　　　)
on its behalf and as representative of a　　)
class of similarly situated royalty owners,　)
　　　　　　　　　　　　　　　　　　)
　　　　　　Plaintiff,　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　)　　　Case No. CIV-11-177-D
　　　　　　　　　　　　　　　　　　)
ENERVEST ENERGY INSTITUTIONAL　)
FUND XIII-A, L.P, *et al*.,　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　Defendants,　　　　　　　)
　　　　　　　　　　　　　　　　　　)
and　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
CHARLES DAVID NUTLEY, *et al*.,　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　Objectors.　　　　　　　)

## ORDER

This matter comes before the Court on Class Counsel's Renewed Motion for Approval of Attorneys' Fees from Common Fund [Doc. No. 302]. The Motion is supported by a Memorandum of Law [Doc. No. 303] and a voluminous record consisting of the following evidentiary materials: Declaration of Bradley E. Beckworth and Robert N. Barnes on Behalf of Class Counsel [Doc. No. 302-1]; separate declarations by each attorney on behalf of their respective law firms, Nix, Patterson & Roach, LLP [Doc. No. 302-2] and Barnes & Lewis, LLP [Doc. No. 302-5]; declarations of other attorneys at these law firms who worked on the case [Doc. Nos. 302-3 and 302-5];[1] the declaration of

---

[1] For Nix Patterson & Roach, the other declarants are senior associate, Lisa P. Baldwin; associates, Cody L. Hill, Andrew G. Pate, Trey Duck, and Nathan B. Hall; senior partners, Jeffrey

appellate counsel, Daniel Volchok of Wilmer Cutler Pickering Hale & Dorr, LLP [Doc. No. 302-7]; the attorneys' time records [Doc. Nos. 320-1 through 320-5]; the declarations of numerous legal experts and class members who provide opinions in support of the Motion [Doc. Nos. 293 through 300, 302-11 through 302-15];[2] a declaration of Plaintiff's president, Robert Abernathy [Doc. No. 304-1]; and the previously approved Settlement Agreement [Doc. No. 111-1 through 111-4].[3]

Objectors Charles David Nutley and Danny George oppose the Motion. *See* George's Resp. Br. [Doc. No. 321]; Nutley's Resp. Br. [Doc. No. 325].[4] Their only submission is a one-page summary [Doc. No. 325-1] of an Oklahoma Bar Association membership survey conducted in 2013. Class counsel have replied to George's brief [Doc. No. 326] and Nutley's brief [Doc. No. 327]. Also, the parties filed supplemental briefs

---

J. Angelovich, Michael B. Angelovich, D. Neil Smith, and C. Cary Patterson; partner, Susan Whatley; and former associates, John C. Hull and Britt Glass. The only other declarant for Barnes & Lewis is partner Patranell Britten Lewis.

[2] Retained experts include William C. Hetherington, Jr., Richard G. Van Dyck, Steven S. Gensler, Geoffrey Miller, Patrick M. Ryan, and David Siegel. Michael Burrage and Dan Little provide opinions as both legal experts and class members. Other class members are Michael P. Starcevich, Michael J. Weeks (Pagosa Resources, LLC), Kelsie Wagner (Kelsie Wagner Trust), Patrick Cowen (Asa R. Maley Revocable Living Trust), and Roger Brown (Omega Royalty Company, LLC).

[3] Class Counsel cite other materials presented in support of their original fee motion that largely duplicate current filings. *See* Mot. at 4-5. A few items remain relevant, as discussed *infra*.

[4] Nutley's attempt to incorporate a prior brief by reference is ineffectual and disregarded. *See* Nutley's Resp. Br. at 2 (citing response to Plaintiff's motion for hearing on remand [Doc. No. 274]). Among other things, incorporation would cause Nutley's brief to exceed the page limit of LCvR7.1(e), and he was not authorized to file an oversized brief. *See* Order Granting Class Rep.'s Mot. Leave File Oversized Br. [Doc. No. 301] at 1 n.1 ("Nutley's request[] to file an oversized response brief . . . should be presented by separate motion.").

regarding the Oklahoma Supreme Court's decision in *Strack v. Continental Resources, Inc.*, 2021 OK 21, 507 P.3d 609 (Okla. 2021).  *See* George's Suppl. Br. [Doc. No. 354]; Nutley's Suppl. Br. [Doc. No. 355]; Pl.'s Suppl. Br. [Doc. No. 356].  Thus, the Motion is fully briefed.

### Factual and Procedural History

The relevant factual allegations and procedural background are summarized in the Order of February 24, 2022 [Doc. No. 358] and Order of March 31, 2022 [Doc. No. 359]. Briefly, Plaintiff Chieftain Royalty Company represents a certified class of oil and gas royalty owners who settled underpayment claims in 2015 with five defendants, EnerVest Energy Institutional Fund XIII-A, L.P., EnerVest Energy Institutional Fund XIII-WIB, L.P., EnerVest Energy Institutional Fund XIII-WIC, L.P., EnerVest Operating, LLC, and FourPoint Energy, LLC.  Objectors appealed both the Order and Judgment Granting Final Approval of Class Action Settlement [Doc. No. 154] and the Order Awarding Attorneys' Fees, Reimbursement of Litigation Expenses and Case Contribution Award [Doc. No. 156].  The Tenth Circuit affirmed the class action settlement but reversed the awards of attorney fees and compensation to the class representative.  *See Chieftain Royalty Co. v. EnerVest Energy Inst. Fund XIII-A, L.P.*, 888 F.3d 455, 470 (10th Cir. 2017) (amended Apr. 11, 2018); *cert. denied*, 139 S. Ct. 482 (2018).  As to attorney fees, the court of appeals remanded for this Court to compute the award under Oklahoma law and, under its view of Oklahoma law, to use the lodestar method based on "detailed time records and evidence as to the reasonable value for the services performed."  *Id*. at 464 (quoting *State ex rel. Burk v. City of Okla. City*, 1979 OK 115, ¶ 8, 598 P.2d 659, 663).

### Standard of Decision

During the pendency of the Renewed Motion, the Oklahoma Supreme Court decided *Strack* and provided controlling guidance on how to determine class counsel's fee award under the Tenth Circuit's mandate to apply Oklahoma law.  First, the supreme court reaffirmed an interpretation of the attorney-fee provision of Oklahoma's class-action statute, Okla. Stat. tit. 12, § 2023(G), applied by lower courts:  a percentage-of-the-fund method is authorized and "valuable" to determine a reasonable fee in a common fund case. *Strack*, 2021 OK 21, ¶¶ 16, 19, 507 P.3d 615, 617.  Second, the supreme court directed that "courts should ensure the reasonableness of the fee award involving a common fund by comparing the fee based on a percentage calculation to what the lodestar approach would produce."  *Id*. at ¶ 18, 507 P.3d at 616.  This comparison acts as a cross-check on a reasonable fee award.  *Id*.  *Strack* teaches that "[a] court's goal in deciding attorney fee awards is to award a reasonable fee, and a court should compare the results of both methods to ensure it is awarding a reasonable fee in a common fund class action."  *Id*. at ¶ 19, 507 P.3d at 617.

As applied to the facts presented in *Strack*, the supreme court concluded that a $19,920,000 fee award computed as 40 percent of the $49,800,000 common fund based on a contingency fee agreement between the class representatives and their attorneys yielded an unreasonable amount.  The court found that "an award of 40% of the common fund [was] excessive when compared to (1) the average percentage used in reported cases [of 20% to 30%], and (2) the amount owed to class counsel for the actual time spent under the lodestar calculation."  *Id*., 2021 OK 21, ¶¶ 21-22, 507 P.3d at 617.  The supreme court

further found the lodestar method used to cross-check the percentage fee was flawed because the district court enhanced the lodestar by a multiplier of 3.17 without sufficient explanation and "based on nothing more than an attempt to equate it to 40% of the common fund." *Id.*, 2021 OK 21, ¶ 31, 507 P.3d at 620. By so doing, the district court abused its discretion to determine a reasonable fee in that case.

### Class Counsel's Motion

Class counsel seek an attorney fee award of $17,333,333.00, which is the same amount previously determined to be reasonable using a percentage-based method and the federal-law factors of *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *See* Order Awarding Atty's Fees, Reimb. Litig. Expenses & Case Contrib. Award (hereafter, "Fee Order") at 7-8. After applying the *Johnson* factors to the facts and evidence presented, the Court found that thirty-three and one-third percent (33 ⅓%) of the cash settlement amount of $52,000,000.00 produced a reasonable fee for class counsel's services. The Court made no lodestar comparison; class counsel did not present evidence that permitted the use of a lodestar method. The Tenth Circuit found this to be a fatal flaw and remanded the case to develop a factual record and perform a lodestar analysis.[5] Accordingly, in support of the Renewed Motion, class counsel have compiled an extensive evidentiary record, described *supra*, that includes time records for each attorney, paralegal, and legal assistant whose work is included in the lodestar computation, and declarations

---

[5] Specifically, the court of appeals directed this Court "to decide in the first instance whether any award can be made in light of the absence of contemporaneous time records." *Chieftain*, 888 F.3d at 464. This issue will be addressed in the context of the lodestar analysis.

from the individual attorneys.  As to some attorneys, class counsel have submitted reconstructed time records that the attorneys created from other records; their methods of reconstruction are described in the declarations.  Class counsel provide legal support for this approach from caselaw and several expert opinions.  *See*, *e.g.*, *Young v. Spencer*, 2017 OK Civ. App. 58, ¶ 25, 405 P.3d 701, 708; Ryan Decl. [Doc. No. 297], ¶¶ 8-9; Siegel Decl. [Doc. No. 300], ¶¶ 8-9.  Class counsel assert that the original fee award is justified by a lodestar product of $8,236.561.50 enhanced by a 2.1 multiplier that is supported by applying Oklahoma's statutory factors in § 2023(G)(4)(e) to the facts of this case.  *See* Mem. Law at 1, 33, 35.[6]  Following *Strack*, class counsel argue that the Court's prior percentage award "was right on the mark" and "a lodestar cross-check fully demonstrates the reasonableness" of the prior award.  *See* Pl.'s Suppl. Br. at 8, 9.

Objectors assert that class counsel's request for the same award is unreasonable because the hours claimed by the attorneys and their hourly rates are excessive and because their legal work is not properly documented.  Specifically, Objectors challenge the Renewed Motion for the following reasons:  1) class counsel should not be compensated

---

[6]  In addition to 13,232.24 hours of legal services provided to the class as of August 17, 2018, class counsel anticipate "spending another 1,850 hours through the end of this Litigation and distribution" of the settlement and include a total time of 15,082.24 hours in the lodestar calculation.  *See id*. at 12, 14; Pl.'s Suppl. Br. at 9; Beckworth & Barnes Decl. ¶ 25, Beckworth Decl. ¶ 54.  Objectors do not challenge the estimate of additional legal work, except George asserts that any future time related to "pursuit of a writ of *certiorari* in the Supreme Court" should be excluded.  *See* George Resp. Br. at 21.  Class counsel did not include projected time for a possible grant of *certiorari* by the Supreme Court in the lodestar figure.  *See* Beckworth & Barnes Decl. ¶ 25 n.5; Beckworth Decl. ¶ 55.  The appellate attorneys submitted time records through July 2018, when they were still drafting the Supreme Court petition.  *See* WilmerHale Time Records [Doc. No. 320-5] at 2-5 (ECF page numbering).  Thus, a question presented, and discussed *infra*, is whether this category of services should be included.

for "reconstructed" time, that is, services for which they did not keep contemporaneous time records (Nutley's Resp. Br. at 3-5); 2) alternatively, class counsel's hours should be drastically reduced due to inadequate documentation (Nutley's Resp. Br. at 5-6, 13-14); 3) some of the attorneys' time is not compensable because it was devoted to litigation against the non-settling defendant, SM Energy Company, the fee litigation, the appeal, and appeal-related work (Nutley's Resp. Br. at 7-12; George's Resp. Br. at 14-23); 4) the claimed hourly rates exceed the customary rates for legal services in Oklahoma and should be cut in half (Nutley's Resp. Br. at 15-17); and 5) no multiplier is warranted or, at most, a 1.5 multiplier would satisfy the applicable factors (Nutley's Resp. Br. at 18-20; George's Resp. Br. at 23-25).

Nutley initially urged the Court to deny class counsel any award or to make an unspecified reduction (Nutley's Resp. Br. at 21-23), but after *Strack*, Nutley contends the award "should not exceed 25% of the fund" or a "reasonable lodestar with, at most, a very modest multiplier." *See* Nutley's Suppl. Br. at 1. George suggests "a fee of no more than $7.5 million," which represents the product of a "lodestar somewhere less than $5 million" and a 1.5 multiplier (George's Resp. Br. at 5, 22-23, 28), "or 14.4% of the $52 million settlement amount." *See* George's Suppl. Br. at 2 (footnote omitted). The Court will address these objections in the context of its analysis.

As a procedural matter, George also asserts that Fed. R. Civ. P. 23(h)(1) requires new classwide notice of the Renewed Motion. *See* George's Resp. Br. at 6-8. He contends the original notice was inadequate to inform class members about the fee request because they did not have access to the supporting documents that are now provided. The cited

7

authority, *Allen v. Bedolla*, 787 F.3d 1218 (9th Cir. 2015), is not persuasive; it involved a failure of counsel to submit the fee motion before the deadline for objections. *See id*. at 1225-26. In this case, class counsel's fee motion was filed and made available to class members before the objection deadline, and the reasonableness of the 2015 class notice has been affirmed. Thus, the concerns raised in the cited authority are not implicated. Further, by failing to make a timely objection, absent class members are foreclosed from participating in subsequent proceedings to resolve the objections raised by others.[7] Objectors provide no authority that would compel a different conclusion.

## Discussion

### A.      The Prior Percentage-Based Fee Award

The Tenth Circuit reversed the original fee award of $17,333,333.00 because it believed a percentage-based award was impermissible under Oklahoma law and because the existing record was insufficient to make a lodestar calculation. After *Strack*, we know the Tenth Circuit was wrong about percentage awards but correct to call for an additional lodestar analysis. Accordingly, because the Oklahoma Supreme Court has now approved the percentage-of-the-fund method used in this case, the Court's prior findings regarding a

---

[7] The notice to class members expressly advised them of the consequences of failing to object to the requested fee award, stating in relevant part: "ANY CLASS MEMBER WHO DOES NOT OBJECT IN THE MANNER DESCRIBED HEREIN WILL BE DEEMED TO HAVE WAIVED ANY OBJECTION AND SHALL BE FOREVER FORECLOSED FROM MAKING ANY OBJECTION TO THE PROPOSED SETTLEMENT AND THE APPLICATION FOR ATTORNEYS' FEES AND EXPENSES . . . ." *See* Notice of Proposed Settlement [Doc. No. 111-4] at 22-23 (ECF page numbering).

reasonable percentage-based award remain valid and are reaffirmed.  For convenience of

the reader, the Court restates them here:

> 9.    The Settlement has created a fund of $52,000,000 in cash and also binding changes to the Settling Parties' royalty payment methodology that has an estimated minimum present value of $2,965,000.  The preferred method of determining a reasonable attorney fee award in common fund cases is the percentage of fund analysis.  Class Counsel seeks an attorney's fee constituting 40% of the Settlement.   Though the contingency fee agreement allows Class Counsel to recover 40% of any common fund recovery, the Court believes that, in fairness and consistent with the best interest of the Class, Class Counsel should recover thirty-three and one third percent (33 1/3%) of the fund.  The foregoing award of fees and expenses is fair and reasonable and shall be paid to Class Counsel from the Gross Settlement Fund in accordance with the terms of the Settlement Agreement. The distribution of attorneys' fees among Class Counsel shall be within Class Counsel's sole discretion.

*See* Fee Order at 5 (footnote omitted).

> 11.    In making this award of attorneys' fees and reimbursement of Litigation Expenses to be paid from the Gross Settlement Fund, the Court makes the following findings of fact and conclusions of law in addition to those set forth above:
>
> (a)    The Settlement has created a fund of $52,000,000 in cash and also binding changes to the Settling Parties' royalty payment methodology that has an estimated minimum present value of $2,965,000.  Settlement Class Members will benefit from the Settlement that occurred because of the efforts of Class Counsel;
>
> (b)    The fee sought by Class Counsel was negotiated by and has been endorsed as fair and reasonable by Class Representative, Chieftain Royalty Company, who, through its President, Robert Abernathy, was actively involved in the prosecution and resolution of the Litigation;
>
> (c)    Copies of the Notice were mailed to over 21,000 Settlement Class Members and expressly stated that Class Counsel would apply for attorneys' fees in an amount not to exceed forty percent (40%) of the Settlement Cash Amount and reimbursement of Litigation Expenses incurred by Class Counsel in connection with the prosecution and resolution of the Litigation in an amount not to exceed $900,000, plus interest.  Only two objections were asserted.
>
> The preferred approach for determining attorneys' fees in common fund cases is the percentage of the fund method.  Under the

percentage of the fund method, an appropriate fee is equal to a reasonable percentage of the common fund.

Under this approach, the trial court evaluates the reasonableness of the requested percentage by analyzing the applicable factors contained in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). . . .  "[R]arely are all of the Johnson factors applicable; this is particularly so in a common fund situation."  The Court finds that most, if not all, of the Johnson factors support Class Counsel's fee request, as reduced by the Court;

(d)    Class Counsel has conducted the Litigation and achieved the Settlement with skill, perseverance and diligent advocacy;

(e)    The Litigation involved complex factual and legal issues and was actively prosecuted for over four years;

(f)    Had Class Counsel not achieved the Settlement, there would remain a significant risk that Class Representative and the other members of the Settlement Class may have recovered less or nothing from the Settling Parties;

(g)    Class Counsel devoted substantial time and resources to achieve the Settlement;

(h)    As set forth in the Memorandum, most, if not all, of the *Johnson* factors support Class Counsel's fee request here, as reduced by the Court;

(i)    An award of thirty-three and one third percent (33 1/3%) of the Settlement Cash Amount is not unusual.  The Tenth Circuit has previously identified the typical fee range as 23.7% to 33.7%.  And fees in the range of one-third of the common fund are frequently awarded in class action cases as fair and reasonable.  The Court's award here is more in line with the average range in such cases than the higher fee award requested by counsel, and thus represents compensation that is fair for both counsel and the Class[;]

        *    *    *    *

(k)    The market rate for Class Counsel's legal services also informs the determination of a reasonable percentage to be awarded from the common fund as attorneys' fees[.]

*See* Fee Order at 6-10 (legal citations and parentheticals omitted).

The twelve *Johnson* factors applied by the Court – both expressly in the Fee Order and by reference to class counsel's Memorandum [Doc. No. 124] (at pages 12-22) – "are essentially the same as" Oklahoma's *Burk* factors now codified in § 2023(G)(4)(e) except

the statute adds a thirteenth factor.  *See Chieftain*, 888 F.3d at 463, *Strack*, 2021 OK 21, ¶ 27, 507 P.3d at 619.[8]  In addition to its prior findings, the Court can now better assess the first factor – the time and labor required – based on the attorneys' declarations and the time records submitted after remand.  Even taking Objectors' criticisms of these records into account, the Court finds that this factor fully supports the percentage previously found to be reasonable; a substantial percentage is needed to reflect the considerable expenditure of legal resources required to litigate this factually and legally complex case and to achieve nearly complete success for the class.[9]

Considering the added thirteenth factor – the risk of recovery in the litigation – the Court finds that this factor weighs heavily in favor of the chosen percentage.  As explained by class counsel, and not disputed by Objectors, the risk in this case was multifaceted and substantial due to the complexity of the factual and legal issues, the difficulty of obtaining classwide relief for royalty owners claiming under diverse leases,[10] the unsettled nature of

---

[8]  The statutory factors are:  "(1) time and labor required, (2) the novelty and difficulty of the questions presented by the litigation, (3) the skill required to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount in controversy and the results obtained, (9) the experience, reputation and ability of the attorney, (10) whether or not the case is an undesirable case, (11) the nature and length of the professional relationship with the client, (12) awards in similar causes, and (13) the risk of recovery in the litigation."  Okla. Stat. tit. 12 § 2023(G)(4)(e).

[9]  According to an accounting expert retained to assist in allocating settlement proceeds, "[t]he $52,000,000 Settlement Cash Amount obtained in this case represents approximately 100% of the Class'[s] claimed royalty underpayment principal (*i.e.*, not including interest) over the entire Class Period."  *See* Barbara Ley Aff. [Doc. No. 122-3], ¶ 3.

[10]  During the pendency of this case, controlling law regarding class certification was in flux, and class certification was denied in numerous royalty underpayment cases in this district. *See*, *e.g.*, *Foster v. Merit Energy Co.*, 289 F.R.D. 653 (W.D. Okla. 2012); *Foster v. Merit Energy*

substantive law on issues such as the "marketable product" rule,[11] and the mercurial nature of the oil and gas industry.

Objectors urge the Court to revisit its prior decision in light of statements in *Strack* regarding reasonable percentage awards. Objectors contend the percentage chosen by the Court is too high based on the supreme court's observation that reported decisions reflect an average percentage of 20-30% in common fund cases. *See Strack*, 2021 OK 21, ¶¶ 21-22, 507 P.3d at 617. But the statistic referenced in *Strack* does not reflect an average award in this type of case, as shown by the record. *See, e.g.*, Hetherington Decl. [Doc. No. 293], ¶ 62 & Ex. B; Van Dyck Decl. [Doc. No. 294] ¶¶ 54-55 & Ex. 1; Miller Decl. [Doc. No. 296], ¶¶ 49 & Ex. 1. The Court is not persuaded that *Strack* requires a reduction of the amount determined to be appropriate <u>in this case</u> based on the particular facts and circumstances presented here. As noted, class counsel's hard work and skilled advocacy achieved an excellent result for the class. Further, class counsel correctly notes that the Court used only the $52 million cash settlement when determining a percentage-based fee, but the award is effectively 31.5% of the total settlement value of $55 million when nearly $3 million in future benefits is considered. *See* Pl.'s Suppl. Br. at 8, 9. The Court finds this percentage is entirely reasonable under the facts of this case.

---

*Co.*, 282 F.R.D. 541 (W.D. Okla. 2012); *Foster v. Apache Corp.*, 285 F.R.D. 632 (W.D. Okla. 2012); *Morrison v. Anadarko Petrol. Corp.*, 280 F.R.D. 621 (W.D. Okla. 2012); *Tucker v. BP Amer. Prod. Co.*, 278 F.R.D. 646 (W.D. Okla. 2011).

[11] The Tenth Circuit recently recognized the existing tension between intermediate state court decisions and attempted to predict how the Oklahoma Supreme Court might answer the marketability question. *See Naylor Farms, Inc. v. Chaparral Energy, LLC*, 923 F.3d 779, 795 (10th Cir. 2019).

The Court turns now to the remaining issues to be addressed under the Tenth Circuit's mandate and the Oklahoma Supreme Court's instruction in *Strack* to perform a lodestar cross-check.

**B.    The Lodestar Cross-Check**

"The lodestar method for calculating fees is to 1) determine the compensation based on the hours spent multiplied by an hourly rate, and 2) enhance or decrease the fee through consideration of the factors outlined in *Burk*, 1979 OK 115, ¶ 8, 598 P.2d at 661." *Strack*, 2021 OK 21, ¶ 13, 507 P.3d at 614.  For class actions, thirteen factors "almost identical" to those in *Burk* are provided by statute.  *Id*. at ¶ 27, 507 P.3d at 619; *see* Okla. Stat. tit. 12 § 2023(G)(4)(e).

**1.    Computing the Lodestar**

**a.    Hours of Legal Services**

The lodestar calculation first requires a determination of the amount of time reasonably spent providing legal services to the class, as evidenced by the time records of the attorneys and legal professionals who worked on the case.  Here, some attorneys kept time records consistent with *Burk*, 1979 OK 115, ¶ 20, 598 P.2d at 663.  However, Nix Patterson & Roach did not require its attorneys to keep contemporaneous time sheets before the 2015 hearing to approve the settlement; thus, in preparing the renewed fee request, some attorneys have reconstructed their prior time records.  *See* Beckworth Decl. ¶¶ 43-44, 47-48.  Nutley challenges whether a reconstruction of time records is permitted by Oklahoma law and whether the reconstructed records are adequate to permit a lodestar analysis.

The first challenge is largely fueled by the Tenth Circuit's opinion, which posed the question "whether any award can be made in light of the absence of contemporaneous time records." *Chieftain*, 888 F.3d at 464. Nutley urges a negative answer. However, the Court finds no basis in Oklahoma law for a contention that an attorney forfeits a right to reasonable compensation for services rendered if he or she lacks contemporaneous time sheets and instead presents time records constructed from other contemporaneous documents and records. In addition to the legal authorities and expert opinions presented by class counsel, the Court finds that the Oklahoma Supreme Court has expressly rejected a contention that the guidelines in *Burk* "are mandatory, and that failure of counsel to follow those documentation guidelines prohibits an award of attorney fees." *See Conti v. Republic Underwriters Ins. Co.*, 1989 OK 128, 782 P.2d 1357, 1362.

Nutley implicitly seeks to distinguish cases in which reconstructed records have been used to determine fee awards – for example, where the attorneys' contemporaneous records were lost or destroyed – by arguing that attorneys who simply fail to keep time records should be penalized for their own neglect. The Court is not persuaded by this argument, which lacks relevant legal support and is factually inappropriate. The Tenth Circuit's decision in this case to apply Oklahoma law to attorney fee awards in Rule 23 class actions and to demand a lodestar computation, represented a sea change that class counsel should not be punished for because they failed to anticipate it.

The reconstructed records submitted in this case are accompanied by class counsel's explanations of how the records were prepared, presented in sworn declarations of the attorneys who were personally involved. *See*, *e.g.*, Beckworth Decl. [Doc. No. 302-2]

¶¶ 47-53, 59; Baldwin Decl. [Doc. No. 302-3] ¶¶ 6-7; Hill Decl. [Doc. No. 302-3] ¶ 8; Angelovich Decl. [Doc. No. 302-3] ¶ 5.  Other attorneys have reviewed with approval the methods employed and the records produced, and have provided declarations in support of the Court's use of those records in its determination.  *See*, *e.g.*, Hetherington Decl. ¶¶ 34-37; Van Dyck Decl. ¶ 36; Ryan Decl., ¶¶ 8-9; Siegel Decl., ¶¶ 8-9.  Objectors do not challenge these factual assessments or legal opinions.  Instead, Nutley merely argues that the records are generally insufficient and unreliable.

The Court is not persuaded by Nutley's arguments and rejects his attack on class counsel's integrity.  Nutley primarily contends the reconstructed records lack sufficient detail to support lodestar findings.  He points to time entries that list "admin" activities or "team" meetings, and to block-billed entries that aggregate multiple activities into a single time period.  *See* Nutley's Resp. Br. at 13-14.  Nutley seems to propose that each individual time entry claimed by class counsel must be determined to be reasonable and necessary.  Setting aside for the moment Objectors' assertions that certain categories or time periods of service are not compensable, the Court finds no legal authority for the proposition that it must examine each time entry and approve each specific service.  This herculean task would not be an efficient use of judicial resources and is inconsistent with caselaw.  Even in fee-shifting cases where the lodestar is determinative, "the district court need not identify and justify every hour allowed or disallowed, as doing so would run counter to the Supreme Court's warning that a request for attorney's fees should not result in a second major litigation."  *Malloy v. Monahan*, 73 F.3d 1012, 1018 (10th Cir. 1996) (internal quotations omitted); *see Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

Notably, in adopting the lodestar cross-check rule in *Strack*, the Oklahoma Supreme Court relied on legal treatises that survey class action laws and trends nationwide. *See Strack*, 2021 OK 21, ¶ 18, 507 P.3d at 616. A leading treatise identifies a majority view that "for the purposes of a cross-check, [courts] need not scrutinize each individual billed hour, but may instead focus on the general question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys." *See* 5 William B. Rubenstein, *Newberg on Class Actions*, § 15:86 at 331 (5th ed. 2015) (footnote omitted). Some courts have held that "the lodestar cross-check calculation need entail neither mathematical precision nor bean-counting" and "district courts may rely on summaries submitted by the attorneys and need not review actual billing records." *See In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306-07 (3d Cir. 2005); *accord In re NCAA Grant-in-Aid Cap Antitrust Litig.*, 768 F. App'x 651, 654 (9th Cir. 2019) (unpublished).

In this case, the Court has examined the attorneys' declarations describing the reconstruction methods they used to prepare time records after remand, and has reviewed the time records submitted by all class counsel. The Court has previously determined that class counsel's "time records provide an adequate and reliable source of information for conducting a lodestar computation in this case." *See* 2/24/22 Order at 10. The Court adheres to that view. The Court finds that the current record is adequate to demonstrate the legal services provided by class counsel for purposes of a lodestar cross-check. The Court further finds that those records generally show the amount of time devoted to the litigation was reasonable overall to obtain the excellent result achieved for the class.

### b.     Compensable Time

Objectors assert that some of class counsel's time should not be counted.  The Court distills from their arguments the following reasons:   1) class counsel are not entitled to compensation for services that did not directly benefit the class but instead served counsel's interest in obtaining and preserving their fee award (George's Resp. Br. at 14-23); 2) specifically, services devoted to unsuccessfully defending the original awards on appeal and expended for appeal-related services are not compensable (Nutley's Resp. Br. at 8-12; George's Resp. Br. at 19-22); 3) in particular, appellate attorneys who were retained by class counsel should not be paid by the class (Nutley's Resp. Br. at 12-13); and 4) class counsel's time should be apportioned between the settled claims and the remaining claims against SM Energy Company so that "the Enervest settlement class is not subsidizing the attorneys' fees for the SM litigation" and class counsel are only "paid for time attributable to success on the claims they settled."  *See* Nutley's Resp. Br. at 7-8.

### 1)     Direct Benefit to the Class

George takes the general position that class counsel must show their services directly benefited the class to obtain compensation from the common fund, and that any legal services rendered after the Court approved the class action settlement did not benefit the class and should not be compensated.  George views any post-approval services as work done out of the attorneys' self-interest in collecting a fee.  This position regarding proof of a class benefit is consistent with a position Objectors took in opposition to Plaintiff's incentive award.  The Court has rejected their position.  The Court previously found "no factual or legal basis for Objectors' contention that post-approval services to complete the

class action settlement do not benefit the class." *See* 3/31/22 Order at 10. The Court adheres to the findings and conclusions stated in its March 31 Order. *Id*. at 10-11. Class counsel's work to complete the class settlement approved by the Court and affirmed by the court of appeals "cannot reasonably be viewed as creating a conflict with the class, as suggested by Objectors." *Id*.; *see* George's Resp. Br. at 18 ("Class counsel's interests necessarily became adverse to the Class at the moment when they asked the Court to award them a portion of the Class's settlement fund.").

George's legal authority for a direct benefit requirement consists of a federal case, *Prandini v. National Tea Co*., 585 F.2d 47, 53 (3d Cir. 1978), which was not a common fund case and is inconsistent with Oklahoma law. *See* George's Resp. Br. at 14-15, 16, 18. The Oklahoma Supreme Court in *Burk* approved the inclusion of time spent by counsel on fee-related work in the lodestar figure of a common fund case. *See Burk*, 1979 OK 115, ¶ 17, 598 P.2d at 662. George ignores this controlling authority and even argues that "the court in *Burk* erred" in holding that time spent pursuing attorney's fees was recoverable. *See* George's Resp. Br. at 18. The Court finds that George's position is not well founded and rejects his view that class counsel cannot include time spent on the fee litigation, or any time that did not provide a direct benefit to the class, in the lodestar computation.

### 2)   Appeal-Related Services

Objectors assert that class counsel cannot recover any fees for time devoted to the appeal or appeal-related work, which included filing a petition for a writ of certiorari with the United States Supreme Court. This objection has both legal and factual components. Objectors argue that class counsel are prohibited from recovering fees for an unsuccessful

defense of the original award on appeal and that the amount of time devoted to the appeal was unreasonable.   George specifically asserts that none of class counsel's time after January 1, 2016, should be counted and thus more than $3 million should be deducted from the lodestar figure.  *See* George Resp. Br. at 20-21.

Apart from arguing that appeal-related services did not benefit the class, Objectors' legal argument for excluding appellate work from the lodestar is that this Court lacks jurisdiction to award appellate fees without authorization from the Tenth Circuit.  *See* Nutley's Resp. Br. at 9.  The Court finds both arguments to be misguided.  By including appellate services in the lodestar figure, the Court is not awarding class counsel an appellate fee but is assessing the overall value of legal services provided during the representation. Resolving Objectors' opposition to the fee award – through both the appeal and these remand proceedings – is necessary to finalize the class settlement and make a final distribution of the settlement fund.  To exclude from the lodestar figure time that class counsel has spent in determining the fee award would cause counsel to bear the cost of services that were necessary to complete their representation of the class.   Although Objectors strongly dispute the reasonableness of the appellate work, they do not suggest that class counsel had any real choice (short of capitulating to their positions) but to defend the appeal and litigate the fee award.  Further, Objectors ignore that the Oklahoma Supreme Court included appellate work in the lodestar computation in *Burk*, 598 P.2d at 662.[12]

---

[12]  The supreme court stated in describing the attorneys' work:  "In addition to studious preparation for trial and trial time, the record in this Court discloses that multiple briefs had been filed by the attorneys in a multiplicity of appeals arising from this continuing litigation."  *Id*.

Nutley specifically objects to the inclusion of time billed by appellate attorneys who were retained by class counsel; he claims their services were not approved by the Court and were unnecessary. *See* Nutley's Resp. Br. at 12-13. According to class counsel, attorneys specializing in federal appellate practice were engaged for their expertise to complete the appeal and exhaust the appellate process, and payment is now sought for their services in the same manner as other contract attorneys who assisted class counsel at other points in the litigation. *See* Beckworth Decl. ¶ 52. The declaration of an appellate attorney, Daniel Volchok, on behalf of his firm, Wilmer Cutler Pickering Hale & Dorr, LLP, and the time records of the attorneys involved in the representation, confirm the nature and extent of the services performed. *See* Volchok Decl. [Doc. No. 302-7], ¶ 5; WilmerHale Time Records [Doc. No. 320-5].

Turning to the reasonableness of the amount sought for appeal-related services, the questions presented by class counsel's bid to include all time spent on appellate work in the lodestar computation concern the reasonableness of the services and the scope of the work. After careful consideration, the Court cannot say that class counsel's opposition to Objectors' fee challenge, though zealous, was beyond the bounds of reasonable professional judgment. Objectors understandably question the need for class counsel to engage appellate practice specialists late in the appeal, to mount a robust attack on the panel's decision through a petition for rehearing and rehearing *en banc*, and to petition the Supreme Court for a writ of certiorari.[13] Although a close question, the Court finds that

---

[13] In the post-settlement litigation against SM Energy Company, class counsel's zealous advocacy included a motion to certify a question to the Oklahoma Supreme Court based on their

class counsel's appellate work was the product of strategic decisions that fall reasonably

within the scope of their representation of the class.  Further, the Court declines to second-

guess class counsel's professional judgment and to penalize their exercise of that judgment

by disregarding some appeal-related work and excluding it from the lodestar cross-check.

There is ample support in the record from numerous legal experts and attorneys regarding

the reasonableness of the decisions that were made.[14]

The Court is mindful of the Oklahoma Supreme Court's reminder that district courts

act "in a fiduciary role to the class when awarding fees" and have a fiduciary duty to class

members.  *Strack*, 2021 OK 21, ¶ 37, 507 P.3d at 621.  In performing this duty, however,

the Court need not accept uncritically the view of class members who object, particularly

where, as here, the objectors are not necessarily aligned with absent class members.[15]

Numerous class members have expressly supported class counsel's Motion and urge the

---

strong belief that the Tenth Circuit was wrong about Oklahoma law.  *See Chieftain Royalty Co. v. SM Energy Co*., Case No. CIV-18-1225-J, Pl.'s Unopposed Mot. Certify Question to Okla. Supreme Ct. (W.D. Okla. Mar. 14, 2019).  When that case also reached a settlement, Judge Jones granted class counsel's motion for a fee award based, in part, on the volume and quality of the legal work done, with no suggestion that the attorneys' zealous advocacy was unnecessary or improper.  *See id*. Order Approving Atty's Fees (Apr. 27, 2021).  Of course, the Oklahoma Supreme Court validated class counsel's position about percentage-based awards in *Strack*.

[14]  The Court refers specifically to the declarations of William C. Hetherington, Jr. [Doc. No. 293], Richard D. Van Dyck [Doc. No. 294], Steven S. Gensler [Doc. No. 295], Geoffrey P. Miller [Doc. No. 296], Patrick M. Ryan [Doc. No. 297], Michael Burrage [Doc. No. 298], Dan Little [Doc. No. 299], and David Siegel [Doc. No. 300].

[15]  Objectors' stake in the settlement fund amounts to a collective interest of 0.0005%; Nutley stands to receive $106.57 of the $52,000,000 cash settlement (0.0002049%).  *See* 3/10/16 Order [Doc. No. 192] at 4 & n.4.  Class counsel allege Objectors are "professional objectors" who routinely oppose class settlements in hope of gaining a greater recovery than absent class members. The Court's duty to protect class members would include a duty to scrutinize self-interested objectors.

Court to grant the fee request in full.[16]   Most class members simply remained silent, implicitly satisfied with the settlement terms.   In the Court's view, its fiduciary duty to the class is consistent with ensuring that class counsel receive fair compensation for their hard work to obtain a favorable settlement.   Otherwise, class members would be unable to retain highly skilled and successful counsel in any future litigation.   In this case, under the circumstances presented, the Court finds that class counsel should be fully compensated for the legal services they provided through the conclusion of this case.

### 3)      Apportionment

Nutley's apportionment argument relies on principles of Oklahoma law developed under fee-shifting statutes.   *See* Nutley's Resp. Br. at 7-8.   Generally, "[a]n attorney fee award is recoverable to a prevailing party only for the work attributable to a claim for which such fees are statutorily recoverable." *Lee v. Griffith*, 1999 OK 32, ¶ 5, 990 P.2d 232, 233. Thus, Oklahoma courts typically apportion fees between claims for which attorney's fees are recoverable and those for which they are not.   *See Green Bay Packaging, Inc. v. Preferred Packaging, Inc.*, 1996 OK 121, ¶ 38, 932 P.2d 1091, 1098; *Sisney v. Smalley*, 1984 OK 70, ¶ 22, 690 P.2d 1048, 1052.   Also, Oklahoma law recognizes exceptions to the general rule of apportionment under certain circumstances, "such as when a lawsuit consists of closely interrelated claims" that make it impracticable and unnecessary to

---

[16]   These include class members who are attorneys, *see* Burrage Aff. ¶ 23, Little Aff.  ¶ 13, and others who are knowledgeable royalty owners.  *See* Starcevich Aff. [Doc. No. 302-11]; Weeks Aff. [Doc. No. 302-12] (Pagosa Resources, LLC); Wagner Aff. [Doc. No. 302-13] (Kelsie Wagner Trust); Cowen Aff. [Doc. No. 302-14] (Asa R. Maley Revocable Living Trust); and Brown Aff. [Doc. No. 302-15] (Omega Royalty Company, LLC).

completely segregate fee-bearing from non-fee bearing claims.  *See Silver Creek Invs., Inc. v. Whitten Const. Mgmt., Inc.*, 2013 OK CIV APP 49, ¶ 14, 307 P.3d 360, 366.

Nutley provides no legal authority for applying the apportionment rule in the common fund context, nor does he acknowledge the exception, which would apply in this case of interrelated claims.  Plaintiff sued to challenge an accounting and royalty payment system employed by SM Energy Company; the settled claims against other defendants resulted solely from a transfer of oil and gas assets and liabilities during the litigation. There were no separate claims against SM Energy Company until the class settlement was reached and the class action settlement was affirmed.  *See*, *e.g.*, Stip. re Third Am. Compl. [Doc. No. 232].  Thus, the Court rejects Nutley's assertion that class counsel's hours should be cut in half to account for the fact that, before the settlement was reached, the attorneys' work on the case benefited both class members and persons outside the settlement class. *See* Nutley's Resp. Br. at 8.

The Court does find in the time records submitted by class counsel a few isolated instances where an attorney or paralegal appears to have included work done on non-settled claims against SM Energy Company after the class settlement was approved.  Nutley correctly observes that a few entries by Mr. Beckworth mention discovery or summary judgment work in 2016 and must refer to ongoing litigation against SM Energy Company during the appeal.[17]  However, the Court finds these items too inconsequential to warrant

---

[17]  Specifically, Mr. Beckworth's time records include such references during the weeks of January 25, 2016, July 4, 2016, September 5, 2016, and September 12, 2016.  Similarly, a legal assistant (Shelley Prince) included 12 hours of deposition preparation work in July 2018.

a recalculation of Nix Patterson & Roach's lodestar, which is based on almost 8,000 hours of work totaling over $4 million.

### c. Hourly Rate

Nutley attacks the hourly rates claimed by class counsel as unreasonable because they exceed local rates for legal services in Oklahoma. As his sole point of reference, Nutley relies on an informal survey of Oklahoma attorneys conducted in 2013 that had an overall response rate of 11 percent. The Court finds this evidence to be unhelpful. However, the Court is generally familiar with customary rates charged by civil litigation attorneys in this district and acknowledges that class counsel's rates are higher than those of local attorneys with similar practice experience. Nevertheless, the Court rejects Nutley's position that class counsel's hourly rates are necessarily unreasonable and finds that his objection lacks merit.

The Oklahoma Supreme Court discussed in *Strack* the rule advocated by Nutley, that is, a fee request ordinarily must be based on standard rates in the local legal community. *See Strack*, 2021 OK 21, ¶ 23 n.10, 507 P.3d at 617 n.10. However, the supreme court distinguished cases like the one before it where class counsel "performed highly specialized legal services" and the evidence showed "attorneys from national litigation firms that performed services in oil and gas class actions in Oklahoma charged hourly rates from $550 to $900 per hour." *Id.* The court expressly found that the district court in that case properly allowed class counsel hourly rates of $875 for senior attorneys and $500 for other attorneys. *Id.* Further, a reasonable lodestar included hourly rates for

paralegals of $275 and $200, and "an average of $790 per hour" for all legal services.  *See id.* 2021 OK 21, ¶¶ 10-11, 507 P.3d at 617-18.[18]

Similar evidence and comparable rates are presented in this case.  *See*, *e.g.*, Miller Decl. ¶¶ 31-39; Siegel Decl. ¶ 12.  The nature and quality of the legal services provided by class counsel and the rates charged in the relevant legal community of litigation firms that handle similar cases commands the hourly rates claimed by class counsel in this case.[19]  Therefore, the Court finds the claimed rates are reasonable for the work performed.

### d.    Conclusion

Upon consideration of all Objector's arguments, the Court finds that the objections are unfounded and should be rejected.  The Court is intimately familiar with this case, which was pending on its active docket for more than seven years; Objectors are relative newcomers who appeared only after a settlement was reached.[20]  It was through class counsel's prolonged effort, unique skill, and substantial investment in the case that the class was able to obtain a near-complete recovery of allegedly unpaid royalties.  The Court finds that the lodestar amount claimed by class counsel, with only a minor adjustment, is entirely

---

[18]  The hourly rates for paralegals are not identified in the supreme court's opinion but are shown by the district court record.

[19]  Although not expressly challenged, the Court also finds that the hourly rates claimed by appellate counsel are supported by the record and are reasonable for the services provided.

[20]  The case was removed from state court in February 2011, stayed at the request of the parties from November 2012 to July 2013, and administratively closed in December 2018 when Plaintiff's remaining claims against Defendant SM Energy Company were severed and became a separate case.  *See Chieftain Royalty Co. v. SM Energy Co.*, Case No. CIV-18-1225-D (W.D. Okla. Dec. 17, 2018).

justified and reasonable.[21]  The Court thus finds a total lodestar sum of $8,044,667.75 for

14,235.49 hours of legal services computed as follows:

| Law Firm | Hours | Lodestar |
|---|---|---|
| Nix Patterson & Roach | 7,837.86 | $4,278,323.75 |
| NPR's contract attorneys: Celtic Legal | 1,364.00 | $72,505.75 |
| Barnes & Lewis | 2,877.93 | $2,279,788.25 |
| Wilmer Cutler Pickering Hale & Dorr | 405.70 | $361,550.00 |
| Estimate of services needed to complete the class representation | 1,100  NPR<br>500  BL[22]<br>150  WH | $647,500.00<br>$300,000.00<br>$105,000.00 |

### 2.    Considering an Enhancement

To align a lodestar-based fee with the $17,333,333 percentage-based fee would

require a multiplier of 2.15.  When considered solely for the purpose of a cross-check on

the reasonableness of a percentage fee, mathematical precision is not required.  *See* 5

William B. Rubenstein, *Newberg on Class Actions*, § 15:87 at 343 (5th ed. 2015) ("since

the multiplier is part of a cross-check, the question is not whether the multiplier is accurate,

---

[21]   Class counsel includes in their lodestar computation an additional 746.75 hours (valued at $103,143.75) for accounting work done by Jennifer Hoyt, a certified public accountant.  Class counsel provides no authority, however, for including nonlegal work in an attorney-fee award.

[22]   Mr. Beckworth's declaration and class counsel's brief include a 600-hour estimate for the remaining work to be done by Barnes & Lewis during the distribution phase.  However, the Court accepts the figure stated in the declaration of Robert Barnes and Patranell Britten Lewis [Doc. No. 302-5] at paragraph 12.

but rather whether it is an appropriate range").  However, even under an exacting lodestar calculation, the Court finds that a 2.15 multiplier is fully justified when the statutory factors are applied to the facts of this case.  Although these factors were considered in assessing the percentage-based award, *supra*, the Court recaps them briefly for the purpose of explaining why this multiplier is appropriate.

### Time and labor required

This factor is generally subsumed by the lodestar computation.  *See Burk*, 582 P.2d at 662 (equating this factor with the lodestar and all other factors as incentive or bonus); *Strack*, 2021 OK 21, ¶ 26, 507 P.3d at 619 ("there is a strong presumption that the lodestar method alone will reflect a reasonable attorney fee").  The quality and scope of the legal work are addressed by other factors.

### Novelty and difficulty of the questions presented by the litigation

Tackling this class action required counsel to confront and resolve a multitude of factual and legal issues (both procedural and substantive) and to litigate these issues against equally skilled, well-funded defense counsel and, ultimately, experienced objectors. Plaintiff's claims for underpayment of royalties on the production of gas from Oklahoma wells that SM Energy Company had operated (and the settling defendants acquired in 2013) formed a highly technical and complex case, involving extensive investigation and discovery, document review, research, accounting review and analysis, consultation with experts, land and lease record review and analysis, engineering review and analysis, damage modeling, substantial legal research and motion practice, and extensive settlement negotiations.  When the action was brought, federal law (including Tenth Circuit law)

regarding class certification was unsettled, and the case presented unique questions of Oklahoma law that have been actively litigated in Oklahoma courts throughout the litigation. *See supra* notes 10-11. Assuming class counsel prevailed on the law, they also faced the prospect of conveying complicated factual proof to a jury. In this case, even typically routine matters of attorney fees and the class representative's award generated novel and difficult questions. Although this complexity is partially reflected in the lodestar, the alignment is far from complete. This litigation demanded highly skilled counsel with both broad knowledge and singular focus.

### Skill required to perform the legal service properly

Partly because of the novelty and difficulty of the issues, but also due to the unique nature of the case, success required great professional skill and incredible determination and drive. Class counsel excelled in all respects. Throughout the litigation, class counsel faced an aggressive defense from skilled counsel for all opponents. Class counsel had to marshal complicated facts, develop innovative legal theories in multiple practice areas, and invest substantial resources needed to accomplish these tasks. Few law firms could have satisfied the demands of this type of case, nor produced the excellent results achieved, in the same manner that class counsel performed the representation in this case.

### Preclusion of other employment by the attorney

Over the lengthy course of this litigation, class counsel have taken on other cases and completed other work. During active phases of this case, however, it commanded the full, undivided attention of a team of attorneys. The Court finds that this factor, standing

alone, weighs only slightly in favor of an enhancement.  A weightier employment consideration is the contingent nature of the work, discussed *infra*.

### Customary fee

For purposes of gauging an enhancement, the Court's focus regarding this factor is the customary multiplier in other, similar cases.  Mindful of the concerns expressed in the *Strack* opinion, the Court nevertheless finds that a 2.15 multiplier in Oklahoma class actions involving claims of underpaid oil and gas royalties is neither unusual nor excessive. Notably, multipliers do not lend themselves to broad comparisons; empirical data shows they vary over time, across jurisdictions and case-types, and according to fund size.  *See* 5 William B. Rubenstein, *Newberg on Class Actions*, § 15:89 (5th ed. 2015).   In recent Oklahoma class actions like this one, however, numerous courts have applied substantial multipliers that are well-documented in this case through the submissions of Plaintiff's legal experts.  *See* Hetherington Aff. ¶ 80; Gensler Aff. ¶¶ 103, 105; Miller Aff. ¶ 59.  The Court finds that a 2.15 multiplier is consistent with customary fees.

### Whether the fee is fixed or contingent

The contingent nature of class counsel's representation in this case weighs strongly in favor of a substantial enhancement of the lodestar fee.  Attorneys undertaking the representation of a putative class seeking to recover unpaid oil and gas royalties face far greater challenges than other contingency fee cases.  Class counsel will likely go unpaid for years and must advance significant costs of investigation and litigation, such as paying numerous experts, with significant risks (discussed *infra*).  Only the largest or best-funded law firms could afford the financial burden and endure the delay in payment that this type

of case entails.  In this case, the attorneys have been deprived of any compensation for more than ten years, and their law firms advanced litigation costs of over $500,000.  No attorney would be willing to take on this case without a substantial incentive payment.

### Time limitations imposed by the client or circumstances

Class counsel have not provided any specific facts regarding this factor, aside from what has already been discussed in addressing the preclusion of other employment.

### Amount in controversy and the results obtained

This factor also merits a substantial enhancement of the lodestar fee.  Class counsel achieved near-complete success in recovering the alleged underpayments of royalties for all class members, and the total value of the settlement was almost $55,000,000.

### Experience, reputation and ability of the attorneys

The extensive experience, superior reputation, and exceptional ability of class counsel is well established by the record.  Through personal observation of class counsel's work in this case, the Court can confirm that their accolades are accurate and deserved. The Court gives this factor some, but not great, weight because it is largely reflected in the attorneys' hourly rates for their services.

### Whether the case is an undesirable case

For the reasons previously stated regarding the unique contingency in this case, the Court finds it to be an undesirable case for all but a few specialized, well-funded law firms. Most lawyers would be unable to consider taking on a class representation like this one. Class counsel's willingness to provide their services to the class should be encouraged and rewarded.

### Nature and length of the professional relationship with the client

Class counsel have represented Plaintiff in other cases for several years. Class counsel have also worked to advance the interests of class members by advocating for the rights of royalty owners generally and by working to protect their interests in other forums in the state. This expenditure of time and effort is not reflected in the lodestar figure and so warrants some degree of enhancement.

### Awards in similar causes

To the extent this factor in a lodestar cross-check serves to compare the multipliers used in other cases, the Court has already addressed this issue. As to the overall fee award, the Court finds that the percentage-based fee in this case is fully consistent with the attorney-fee awards made in other class actions for underpayment of oil and gas royalties. Again, this fact is well-documented through the submissions of Plaintiff's legal experts.

### Risk of recovery in the litigation

The importance of the risk factor in this case cannot be overstated. It might be easy with the benefit of hindsight to overlook the risk of nonrecovery this case originally presented. Through the skill of class counsel, a highly favorable and timely class settlement was accomplished – before an economic crisis in the oil and gas industry caused many operators to fail – but no recovery was ever assured or even very likely. The risk to class counsel was even greater, as discussed above, because the litigation could have failed to achieve any return on their considerable investment of time and resources in the case.

Taken together, the cumulative weight of the statutory factors easily warrants a multiplier of 2.15 to class counsel's lodestar, and as a result, the lodestar cross-check confirms the reasonableness of the percentage-based fee awarded to class counsel.

### Conclusion

For all these reasons, the Court finds that a reasonable attorney-fee award to class counsel is $17,333,333.00.  The original award is reinstated, to include reimbursement of expenses of $470,605.75 that have remained unchallenged.  *See* Order Awarding Att'y Fees, Reimburs. Litig. Expenses and Case Contrib. Award [Doc. No. 156], ¶ 7.

**IT IS THEREFORE ORDERED** that Class Counsel's Renewed Motion for Approval of Attorneys' Fees from Common Fund [Doc. No. 302] is **GRANTED**, as set forth herein.  Class counsel is awarded an attorney fee of $17,333,333.00 to be paid from the settlement fund in accordance with the terms of the settlement agreement.  The distribution of attorney fees among class counsel is a matter within their sole discretion.

**IT IS SO ORDERED** this 22nd day of June, 2022.


_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge